UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA AT FORT LAUDERDALE

VLADIMIR ZEEV SHEVRIN,

Plaintiff

-v-

BENNET M. RACKMAN, SOPHIA HERSHMAN
RACKMAN, AMERICAN FRIENDS OF BAR
ILAN UNIVERSITY, SHIRLEY SHAI, NAVA
GADISH, VARDA PLAUT, CARMIT BEN
ELIEZER, ZVI WEIZMAN, GILA GADOT,
AVIAD IGRA, YULIA SHEVRIN, LORI
GEIZLER, GALIT BEN GAL, and INBAL
KIBENSON,

Defendants

Case No:

COMPLAINT

Jury demanded



FILED BY _____ D.C.

DEC 2 9 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Plaintiff, *pro se*, for this complaint, alleges and sets forth as follows:

1.   Plaintiff is a victim of a corrupt, nefarious and terroristic gang of feminist fanatics in Israel, the Rackman family and the Rackman Center who bribes and extort judges and lawmakers in Israel to advocate widespread, systematic and institutionalized discrimination against men, particularly Jewish men, and to inflict upon them denial of basic and international human rights (*jus cogens*), rob them of their property, cut them off from their children, impoverish them, ridicule them and impoverish them, all without fair trial, due process equal protection. In addition to violation the anti corruption laws of the United States (soliciting donations of more than $10,000,000 per year to fund the persecution and enshrinement of the male hate-mongering apartheid ideology of the Rackmans), their actions also constitute violations of RICO.

2.   Due to the acts of the Defendants against Jewish men and fathers in the State of Israel, Plaintiff as a Jewish father became a victim of such inhuman and degrading acts as deprivation of child custody and contact with his children, Parental alienation, blackmail and extortion, arbitrary detention, arrest, interrogation, defamation, and restriction of his Human Dignity, freedom and his liberty.

3.   The acts described are purposeful in the furtherance of a hateful nazi-inspired ideology developed by the deceased Emmanuel Rackman, (Bennet's father), a rabbi from New York who started the activities out of belief that Jewish men are inherently violent and dangerous to their wives, that all Jewish men are mentally sick and suffer from impulses to murder their Jewish wives and to commit incest with their own children, that the Jewish religion is laced with elements of the patriarchy and the oppression of women, that all Jewish women when they marry a Jewish men become victims of the Jewish patriarchy, are abused physically, mentally and economically, and that by sending the millions of dollars a year to the Rackman Center in Israel, American Jews can wash their sins by helping the miserable Israeli sisters who are suffering so much and abused so much. Emmanuel Rackman's vision was top fund a center that takes control of the lawmaking regarding women's privileges, and take control of the process of appointment of judges, and ensure that everyone follows the Rackman "kill all the men" ideology, and he would be the next Jesus, that saves the lives of those abused Jewish women from their murderous and sexually psychotic Jewish husbands.

4.   The success of the Rackman ideology costs the lives of 300-500 men, who commit suicide annually, because of their extortionist divorces that are handled by officials bribed or extorted by Rackman. Many other Jewish men in divorce die slowly of starvation or homelessness.

5.   The Rackman Defendants are acting in concert with Israeli Public state officials, State authorities, left-wing political parties, and certain feminist and pro-Palestinian non-governmental organizations. They promote the position that the fate of the Palestinians and Gazans, as an oppressed minority, is intertwined with the fate of the Jewish women who are similarly suffering under the brutal male Zionist patriarchy regime. The Rackmans have reached such powers that judges and collection magistrates cannot be appointed or promoted without a Rackman approval, and each year they are indoctrinating lawyers in Rackman ideology, so that they take positions, like an octopus, in the management of Legal Aid, in the appointments of guardians' ad litem and in the training of government Social Welfare authorities. Everything is controlled by the Rackmans to ensure that no Jewish man has any chance to escape the fate of annihilation.

2

6.  By bribing judges with money, recommendations, prestige and public relations, the judges are willingly committing inhuman acts and degrading treatment against the Jewish fathers in Israel. Such acts include, deprivation of fair justice, blatant discrimination, deprivation of parental rights, denial of custody and contact, economic coercion and robbery of any and all men's assets and savings, effectively enslaving the Jewish fathers by astronomical awards to the women, depriving the men's ability to work and earn a livelihood, arbitrary deprivations of liberty, including unlawful detentions, arrests, imprisonment, and prosecutions in criminal, civil, and administrative proceedings, restrictions on freedom of movement, including the unlawful denial of the right to leave the State of Israel, imposed even on non-Israeli men, for the purpose of extortion, denial of socio-economic rights, including the right to an adequate standard of living and access to adequate food, financial persecution, including the freezing of bank accounts, cancellation of credit cards, unlawful seizure of funds, forced bankruptcy, and resulting devastation, administrative sanctions, dehumanization and stigmatization, including arbitrary accusations of crimes not committed and the imposition of collective punishment.

7.  By controlling the judiciary and the lawmakers, making them dependent on Rackman clearance and recommendations, defendants amassed immense powers that enable them to perpetrate crimes amounting to genocide and apartheid against Jewish fathers, all with the blessing of the State of Israel and its authorities, as it is impossible to obtain fair justice, or win appeals.

8.  The Rackmans and AFBIU created a web of deputies planted all over Israel in a way that gives them the audacity to dictate to the Ministry of Justice, Ministry of Welfare and to Judges in family and appeals court, and religious courts, how to twist the laws to rob Jewish men, clean them out of their assets, extort them, play with their live, snatch their children away from them, arrest them for bogus claims, and for the past 25 years they are the real policy makers and contrivers of the methods which deprive the fathers any ability to fight in the corrupted and bribed courts of Israel. Judges in Israel have become puppets dancing to the tunes of the Rackman music.

9.  Many Jewish men are forbidden to leave Israel and live under draconian and extortionist no exit orders, which affect especially immigrants to Israel, who cannot return to the homelands, or cannot earn a living if their business is abroad.

10. The crimes perpetrated against Jewish fathers within the State of Israel constitute offenses not subject to any statutory limitation. The State of Israel and its authorities have exhibited both an unwillingness and an inability to initiate, conduct, and conclude the necessary investigations and prosecutions in relation to these offenses.

11. The Defendants in this case, acting in concert with other public officials, Public State authorities, and non-governmental organizations, have pursued a policy and practice of encouraging women to initiate divorce proceedings, thereby destroying Jewish families, and of facilitating and promoting the abduction of children by mothers from their fathers, with the ultimate purpose of bringing Jewish fathers before the Family Court.


**PARTIES**

12. Plaintiff Vladimir **Zeev Shevrin** is a citizen and resident of the county of Broward, FL, and born in Belarus. He is the father of 2 children: N (age 15), J (age 11), who live in Israel. Plaintiff was married to Defendant Yulia Shevrin and lived with her 12 years. Plaintiff is a Registered Nurse in a Hospital. However, he is now unemployed. Plaintiff became alienated from his children in 2022 when Defendant Yulia Shevrin started using the Rackman tactics: false complaints, obtaining restraining orders *ex parte*, evicting Plaintiff from his home, and a plethora of extortion tools. Plaintiff who was once a successful person, became a pauper, beggar, frequent "customer" of the police, and his children do not even know him. The overwhelming debts, which defendants Shai, Gadish, Weitman and Plaut created, render it impossible for Plaintiff to rebuild his life, establish a new family, or have additional children. Plaintiff's address is 1302 E Las Olas Boulevard, Fort Lauderdale, FL, 33301 USA, tel. 954-780-6770.

13. Defendants **Bennet M. Rackman** and **Sophia Hershman Rackman** are residents of Broward County, FL, and are the heirs of the Emmanuel and Ruth Rackman foundation that established the "Rackman Center" in Israel in 2001. The center is presented as a lobbyist institution for Empowering women and women's rights, but in reality it operates as a headquarters of a control center for disseminating hate-mongering ideology of neo-Jewish feminism, which means death and starvation to all Jewish men of the patriarchy. Rackman controls legislators, judges, prosecutors and social workers by bribing them.

Rackman Defendants fund the head of the center Ruth Halperin-Kaddari who orches-
trates genocidal campaigns against Jewish men in Israel. Bennet M. Rackman and Sophia
Hershman Rackman collect donations in Florida to fund the Rackmans' speeches against
Jewish men, dissemination of *Der Stürmer* style communications to the press, media, par-
liament and judges. Halperin Kaddari falsely asserts that Jewish women in Israel are de-
prived of rights, that Jewish husbands and men routinely kill their wives and partners, and
that the home is the most dangerous place for married or partnered women. Halperin-
Kaddari has further propagated the baseless claim that "femicide" is occurring in the
State of Israel, maliciously portraying Israel as a dangerous country for women. She has
knowingly and deceitfully mischaracterized Israeli law and judicial practice, asserting
without basis that the legal system endangers women during divorce proceedings, strips
them of property, denies them custody of their children, and deprives them of social secu-
rity protections. This unfounded, malicious, and criminal propaganda propagated by
Halperin-Kaddari is deliberately employed by the Defendants in this action, in concert
with public officials and state authorities, as a pretext and justification for systematic
Crimes against Humanity perpetrated against Jewish men and fathers in the State of Is-
rael. Defendant Sophia Hershman Rackman is a resident of Florida, and is an heir to Em-
manuel Rackman and she is the main fundraiser to the Rachman Center in the South of
the USA.

14. Defendant **American Friends of Bar Ilan** is a corporation registered in New
York with a branch in Florida, headed by Jessica Bren Nun. They are the umbrella that
solicit the funds to the Rackman Center, which is not incorporated and pretends to be part
of the academic University of Bar Ilan. However, it is nothing but academic. It is a group
of ferocious male-hating women with a burning hate for anything that reeks of the patri-
archy of the Jewish men.

15. Defendant **Shirley Shai** is a citizen and resident of the State of Israel. She is a
Judge of the Family court of Petah Tikva. Defendant Shai owes her judicial appointment
to the Rackmans who lobbied for her. The Defendant Shay is responsible for disengaging
Plaintiff from his children and using the plaintiff's children as a tool for financial devas-
tation of their dad, by imposing on him unaffordable and unpayable child support in favor
of the alienating mother/Defendant Yulia Shevrin, and through other Court costs and

5

punitive fees for plaintiff's motions to renew contact with his children and to prevent his children's exposure to physical and emotional abuse. The Defendant Shay bears direct responsibility for the Plaintiff's financial destruction and for the unlawful severance of his contact with his children.

16. Defendant **Nava Gadish** is a citizen and resident of the State of Israel. She serves as a judge of the Family Court in Petah Tikva. She is bribed by the Rackman Center and her promotion as a judge depends on the Rackman Center. She patronizes the center and attends its conferences and gives it legitimacy. Defendant Gadish has a reputation in the Central District of Israel, she reputed for her harsh treatment of Jewish fathers, including to driving them to despair by denying contact with their children and imposing exhortation child support obligations that bankrupt them. On April 18, 2022 Defendant Gadish threw Plaintiff out of his home without without evidence, forcing him out of his apartment for 60 days., just the way she was indoctrinated at the Rackman Center.

17. Defendant **Varda Plaut** is a citizen and resident of the State of Israel. She is a Judge of the District court of Lod. Defendant Plaut is a Judge in the District court of Lod sitting in Family Appeals. She patronizes the Rackman center and attends its conferences and gives it legitimacy. As an appellate judge she backs up the family court decisions and ensure that Plaintiff has no remedy at appeal. Defendant Plaut is responsible for supporting acts of the Defendant Shay, dismissing the plaintiff's motions to prevent parental alienation, provided unconditional support to the unlawful actions of Shay against of fundamental right to a fair trial.

18. Defendant **Carmit Ben Eliezer** is a citizen and resident of the State of Israel. She is a Judge of the District court of Lod. Defendant Ben Eliezer prevented Plaintiff from accessing the court and bars him from the appellate court by imposing fees requiring a bond. The Plaintiff presented her who has been alienated from his children and is impoverished. Presented her with evidence of his financial situation, that in his case she was required by law to allow him to proceed without payment. Ben Eliezer provided unconditional support to the unlawful actions.

19. Defendant **Zvi Weizmann** is a citizen and resident of the State of Israel. He is a Judge of the District court of Lod. He is bribed by the Rackman Center and her promotion as a judge depends on the Rackman Center. Defendant Weitzman is a VIP patron of

the Rackman Center, frequently attending its conferences and owes his promotion to Rackman. He is proud of his feminazi agenda and doing anything in his power to crush and devastate the Jewish men who seek some justice in his court. Weizmann bears equal liability with Plaut and Ben Eliezer in their capacity as Judges, provided unconditional support to the unlawful actions of Shay, Shevrin, Geizler, Ben Gal thereby depriving the Plaintiff of his rights to fair trial. Weizmann is deliberately obstructing the adjudication of the plaintiff's appeal concerning the imposition of excessive child support payment for children' thereby contributing to the ongoing extortion of the Plaintiff and to his financial ruin.

20. Defendants **Gila Gadot** and **Aviad Igra** are citizens and residents of the State of Israel. They are a Magistrates at the Israel Enforcement and Collections Authority. Gadot and Igra routinely accept for collection any application by Defendant Shevrin to increase the debt with bogus charges. Defendants order the Plaintiff to pay illegal debts even when they have already been paid by him. They forbid Plaintiff from having normal life, by garnishing his bank accounts and leaving him with nothing. They routinely issue no exit orders, and allow false and fabricated receipts to be added to the debt, so the debt can never be paid off.

21. Defendant **Yulia Shevrin** is a citizen and resident of the State of Israel. Defendant Shevrin is the plaintiff's ex-spouse. She is the main beneficiary of the Rackman ideology that enables her to make false police complaints without sanctions, cause plaintiff's arrest without evidence, refuse contact with the children without sanctions and initiated proceeding to alienate the plaintiff children from him, collect exorbitant child support for children, collect fake receipts as child support and make bogus claims on Plaintiff's property in an effort to leave him homeless. Defendant Shevrin unlawfully obtain financial resources from the Plaintiff, restrict liberty of Plaintiff by false complaint with the police.

22. Defendants **Lori Geizler** and **Galit Ben Gal** are citizens and residents of the State of Israel. Defendants Geizler and Ben Gal are family law lawyer. They teach her females clients (in the present case the Defendant Shevrin) how to make false complaints and how to avoid letting the fathers see their children, acting for unlawful enrichment and other forms of misconduct. They are masters of feminazi extortion of Jewish fathers.

23. Defendant **Inbal Kibenson** is a social worker who falsely presents herself as an expert in Richard Gardner's Parental Alienation Therapy technique and as a specialist who purportedly reunites alienated fathers with children who have been incited against them. In reality, she charges substantial fees, consistently sides with women alienating their children from their fathers, and promotes the doctrine that women in Israel are victims of Jewish patriarchy. The defendant Kibenson's intentional actions only exacerbate and perpetuate parental alienation. The same occurred to the Plaintiff in the present case and to his children.

## JURISDICTION

24. Jurisdiction is based on This Court has subject matter jurisdiction over this action under the U.S. Foreign Corrupt Practices Act (FCPA), Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Act (15 U.S.C. § 77q(a)) and Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5) which authorizes action in any appropriate District Court in combination with RICO, the Racketeer Influenced and Corrupt Organizations Act as codified at 18 U.S.C. §§ 1961-68). Subject matter jurisdiction is also conferred by 28 USC § 1331 and 1332.

25. Venue is proper in this Court pursuant to 28 USC § 1391 and 18 USC § 2334. See Section 27 of the Exchange Act.

26. Defendants Bennet and Sophia Rackman are subject to the jurisdiction of this Court under 18 USC § 2334 because they are Florida residents, and own homes in Florida. They are the masterminds of soliciting donations in America the finance the terroristic Rackman Center in Israel which bribes lawmakers, judges, social workers and prosecution agents to adopt and carry out the Rackman principles of inflicting terror on any Jewish men who needs to divorce in Israel. The donations they arrange are made via American Friends of Bar-Ilan University, (AFBIU), a New York non-profit with a branch in Florida managed by Jessica Ben Nun, Southeast Region manager, Tel: 305-335-3998, email: Jessica.Bennun@afbiu.org.

27. AFBIU has assets of about $300,000,000 in the USA which yields profits that are sent to Israel, and Jews in America are asked to donate to fight for women empowerment at the Bar Ilan University, where the Rackman Center hides under its umbrella.  Upon

information and belief in 2023 the sum of $11,080,000 is sent to the Rackman Center, and from there, Ruth Halperin Kaddari is spending it on bribing Judges.

28. The Rackman Center inside the Bar Ilan University positioned itself as an octopus mega RICO organization, with its deputies planted everywhere, in the judiciary as assistant to Judges and judges, as trainers of judges in the academy of judicial training and CLE continuing Legal Aid, its deputies hold the top positions in the Legal Aid thus ensuring the qualified men do not receive legal aid, and its deputies are planted in the various committees of parliament, and receive from them daily updates what to do, what issues to discuss and what laws to legislate.

29. The Rackman Center's choke-hold on the promotion of judges is so strong that Judges know that without a recommendation from Rackman they cannot be promoted and without attendance at the conferences of the Rackman conferences they will never be promoted. Judges who rarely have the bravery to rule in favor of a Jewish man are immediately subjected to a barrage of insulting and shaming articles in the press and media originating from press releases of the Rackman Center.

30. Thus, the entire Judiciary in Israel is being bribed by the Rackman Center to rule pursuant to the radical genocidal ideology of Rackman by way of recommendations for promotions, press release services to promote judges, tickets to hotels and conferences, and in important cases even actual bribes in the form of cash.

31. As too all other Defendants, aggregate jurisdiction is applicable under 18 USC § 2334, as Florida is where all decisions and policies for the actions of the Rackman Center at Bar Ilan, and methods, are made.

32. The Israeli defendants are not entitled to enjoy Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et seq., because they are no different from Hamas terrorists who kidnap citizens, and rape and kill innocent persons, and therefore immunity is not available for them. Their conduct falls within the exceptions to foreign sovereign immunity set forth in 28 U.S.C. §§ 1605(a)(5) and 1605(a), and in particular there are trained and receive orders for operation from the Rackmans or their agents in Florida or Israel.

33. In addition, Plaintiff also invoke the supplemental jurisdiction of this Court, 28 U.S.C. §§ 1367, over claims based upon laws of the State of Florida.

34. Minimum contacts is satisfied since the Israeli defendants receive bribes that are funded from solicitations of funds occurring in this State and all over the USA.

35. All Defendants are aggregated as co-wrongdoers and as such, it is necessary for Defendants' disposition of justice in association with local co-Defendants.

36. Another basis is jurisdiction by conspiracy. "One conspirator's minimum contacts allow for personal jurisdiction over a co-conspirator,' even when the co-conspirator lacks such contacts itself." In re Platinum and Palladium Antitrust Litig., 61 F.4th at 270 (quoting Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 86 (2d Cir. 2018). The theory grounds itself in the premise that one co-conspirator's contacts with a forum may be "imputed" to another co-conspirator who has no direct contacts with a forum because both participate in the same conspiracy underpinning plaintiff's lawsuit.

37. Courts including the Second, Fourth, Tenth, Eleventh, and D.C. Circuits have also embraced the theory of conspiracy jurisdiction. These courts reason that, similar to substantive conspiracy law, where the acts of one conspirator are attributable to all, forum contacts may be imputed across co-conspirators where a bona fide conspiracy is alleged.

38. In fact, in a very recent case from New York, BASF Metals Limited v. KPFF Investment, Inc., NY affirmed jurisdiction by conspiracy over British firm engaged in an antitrust conspiracy, and it was clear there were no minimal contacts for the British, they appealed to the Supreme Court, cited disagreements among various circuit, but the Supreme Court denied the certiorari. That mean the Supreme Court accepted the New York approach to extend the long arm to jurisdiction by conspiracy. By coincidence those defendants were British and after losing the certiorari, they announced a settlement, so no further proceedings are expected there, and it is final. BASF Metals Limited v. KPFF Investment, Inc., cert den. 1/16/2024. "[A] complaint may, alternatively, present circumstantial facts supporting the inference that a conspiracy existed." Id. "[E]ven in the absence of direct 'smoking gun' evidence, a horizontal price-fixing agreement may be inferred on the basis of conscious parallelism, when such interdependent conduct is accompanied by circumstantial evidence and plus factors." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001). Such plus factors include "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm

communications." Mayor & Council of Balt., 709 F.3d at 136 (quoting Twombly v. Bell Atl. Corp., 425 F.3d 99, 114 (2d Cir. 2005), rev'd on other grounds, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## VENUE

39. Venue is proper given Bennert and Sophia Rackman's residence in the district, their solicitation of donations here and using Florida as a platform to finance the Rackman Center in Israel.

## FACTS

40. On April 18, 2022, the Plaintiff was ejected from his home and separated from his children through a restraining order issued against him at the request of the Plaintiff's spouse/Defendant, Yulia Shevrin. (The order was issued by the Family Court - By the Defendant Nava Gadish) *ex parte*, without evidence. In the State of Israel, there are two most straightforward ways to remove a Jewish father from his home and separate him from his children: through the criminal process (claiming to the police - for 15 days) and through the civil process (obtaining a restraining order from the court, for 30-90 days). Neither of these methods requires proof or evidence, but only the woman's desire. Thus, Defendant Nava Gadish, without any indication of violence or any grounds justifying a restraining order against the Plaintiff, issued an order removing him from his home for 60 days. Furthermore, the actions of Defendant Shirley Shay, in collaboration with Defendants Shevrin, Geizler and the plaintiff's attorneys, prevented the plaintiff from returning to his home for almost three years.

41. As early as January 2022, the Defendant, Yulia Shevrin, coached by Defendant Geizler, began inciting the children against the Plaintiff and deliberately alienating them from him. Defendant, Shevrin, instructed the children to cry that the Plaintiff was violent toward them and toward her. However, Defendant Shevrin physically assaulted the daughter, the daughter blamed the mother for using violence and still Defendants Shai, Gadish, Plaut and Ben Eliezer couldn't care less, and continued to depict Plaintiff as the culprit. Defendant Shevrin was taught by Geizler to always provoke Plaintiff into committing violence against her, and she was always unsuccessful.

42. From the children's birth until the divorce in 2022, the Plaintiff was the primary caregiver. Plaintiff raised them, fed them, educated them, took them to doctors while Defendant Yulia Shevrin was "enjoying her freedoms".

43. On June 7, 2022 a Family court hearing was held during which the parties reached an agreement regarding the parenting schedule. The agreement provided both parents with stable custody arrangements and joint responsibility for the children. However, with the advice and assistance of her attorney Defendant Geizler, Defendant Shevrin chose not to comply with the court's decision, resulting in a two-month separation between the Plaintiff and his children. At this stage, the Plaintiff filed numerous motions, including motions to the District [appellate] court. However, Defendants Plaut and Ben Eliezer acted in favor of Defendants Shevrin, Geizler and Ben Gal, dismissed the plaintiff's motions, and actively participated in separating the Plaintiff from his children and creating Parental alienation.

44. On August 14, 2022, Defendant Shai, as a judge of the Family Court, assumed management of the case. The Plaintiff furnished the Defendant with all evidence demonstrating parental alienation. Defendant Shai knew, or should have known, that it was her legal duty and responsibility under Israeli law, International law, and United States law, *inter alia*, to prevent parental alienation. However, Defendant Shai preferred to escalate the parental alienation so that Defendant Yulia Shevrin is better positioned to extort Plaintiff.

45. 3 months after the separation from his children caused by the Defendants, the Plaintiff met them again in June 2022. He did not recognize his own children: the Plaintiff's son wore a woolen hat regardless of the weather, and both children appeared alienated and displayed aggression toward the Plaintiff, including the Plaintiff's parents. They exhibited poor impulse control and made baseless accusations against the Plaintiff and the extended family, showing a complete lack of remorse or guilt.

46. On December 15, 2022, a social worker report was filed with Defendant Shai indicating that Defendant Shevrin is resorting to alienating conduct. As always, Shai could not care less, and instead trashed and ridiculed Plaintiff. Defendant's Shai' approach was so "successful" that quickly the daughter started rejecting contact with her father. Plaintiff submitted dozens of applications and motions to Defendant Shai, and numerous

12

complaints with the Police, about sabotaging the contact, but Defendant Shai only laughed in Plaintiff's face and dismissed the motions same day and in one sentence. Complaints to the Office of the State Attorney and Ombudsman of the Israeli Judiciary were also unsuccessful, because their personnel are also graduates of the Rackman Center.

47. When Plaintiff's motions for contempt of court were piling up, Defendant Shai started inflicting astronomical awards of attorney fees for every motion, which is another technique advocated at the Rackman conferences and training of judges. Defendant Shai imposed more than NIS 17,000 ($5,080) just in connection with motions to compel child access. According to Defendant Shai, making a motion to compel time with the children is a burden on her calendar and malicious.

48. In May 2023, Defendant Shai decided to force Plaintiff to undergo a psychological parental fitness evaluation that cost him $5,200. On August 8, 2023, the results of the evaluation, were sent to Defendant Shai, and clearly stated that Plaintiff is a fit parent, that the daughter is not afraid of him, and that the daughter's emotional difficulties stem from her mother's behavior. It clearly said that Defendant Yulia Shevrin is an alienating parent. Defendant Shai decided to disregard the recommendations that she herself commissioned. Instead, Defendant Shai appointed, another "expert" - the Defendant Inbal Kibenson, a devout feminist so that the emotional extortion can continue, and in effect, facilitate and encouraged Defendant Shevrin to alienate the children from the Plaintiff.

49. In fact, Defendant Shai, with knowledge that her conduct violated Israeli domestic law, International law, and United States law, willfully acted with intent wipe out the father from the children's lives, according to Rackman textbook's judicial conduct.

50. At the same time, Defendant Shai imposed unconscionable child support obligations on Plaintiff, thereby aggravating his financial situation to complete ruin. In October 2022, Defendant Shai ordered Plaintiff to pay child support in the amount of 1,400 NIS ($418) per month, together with retroactive child support. As of today, the Defendants are coercing the Plaintiff to pay a monthly amount of 3,000 ($1,047), plus 50% of nursery, private tutors, 50% dental etc; i.e. approx. $1,500 when he is unemployed. This, notwithstanding the fact that Defendant Yulia Shevrin stole a sum of 225,000 NIS ($68,491)

from the parties' joint bank account, and notwithstanding the fact that Defendant Yulia Shevrin earns 2.5 times more than Plaintiff.

51. To supplement Defendant Shai's orders came the Magistrates at the Israel Enforcement and Collections Authority, Defendants Gila Gadot and Aviad Igra, who accept bogus receipts and inflate the debts with bogus and double charges, just so they have an excuse to garnish Plaintiff's salary and leave him with nothing.

52. The Defendants Gadot and Igra, acting under color of law and in gross abuse of their judicial authority, have willfully and systematically coerced the destitute Plaintiff into paying unlawful and non-existent debts, even after such debts have been fully settled. Defendants Gadot and Igra have deliberately disregarded the Plaintiff's clear and documented evidence of payment and unlawfully refused to revoke the sanctions imposed upon him, thereby subjecting the Plaintiff to ongoing and severe financial persecution and psychological torment.

53. Conversely, the same Defendants Gadot and Igra have, without any objective review or due consideration of the Plaintiff's position, accepted and approved every request submitted by Defendants Shevrin and Ben-Gal, thereby granting them unlawful procedural and financial advantages. Through such discriminatory and prejudicial conduct, Defendants Gadot and Igra have effectively enabled Defendants Shevrin and Ben-Gal to exploit the Plaintiff and to perpetuate a pattern of judicial corruption and bias that systematically targets Jewish fathers in the State of Israel.

54. Because of the control of the Rackman center, Plaintiff has no remedies in appeal. Plaintiff's appeals to the District Court of Lod were dismissed by Weizman and Plaut after dragging the procedure for 11 months, just so that the debts escalate at 30% interest, and teach Plaintiff a lesson that it is useless to appeal.

55. Defendant Yulia Shevrin, acting upon the recommendation of Defendant Ben Gal and Geizler, filed false and malicious complaints with the Israel Police against the Plaintiff, entirely unsupported by evidence. These fabricated allegations resulted in the Plaintiff's wrongful arrest on suspicion of violence against his ex-spouse and subjected him to interrogation. Despite the Plaintiff having provided the police with clear evidence of his innocence, the Israel Police and the Office of the State Attorney nevertheless intend to pursue an indictment against him, in blatant disregard of the facts and due process of law.

The actions of the Israel Police clearly demonstrated to Plaintiff that they operate as part of a widespread and systematic campaign directed against the Jewish fathers in Israel.

56. Since 2022, the Plaintiff has incurred legal expenses totaling NIS 299,687 ($90,104) in connection with court proceedings. Obviously, all legal remedies proved ineffective, demonstrating a persistent unwillingness to enforce compliance with the law or to investigate the violations of the Plaintiff's fundamental human rights

### General Background

57. Defendants' unlawful and inhumane acts against the Plaintiff, including the separation of the Plaintiff from his children, the use of the children as instruments of extortion, the employment of parental alienation as a form of psychological abuse, the restriction and deprivation of the Plaintiff's liberty, are rooted in an ideology of hatred toward Jewish men in the State of Israel, an ideology propagated by the founder of the Rackman Center, work activists, and NGOs funded by same supporters of Palestinian causes, as they see an opportunity to weaken the Israeli society from within by causing wars between men and women, and internal feuds.

58. Emmanuel Rackman was very successful. He has positioned his center right at the chokehold of power, so that anything that is associated with women's rights must be approved by the Rackmans. Everybody in Israel must dance to the tunes of the Rackman Satanic "music". This is why Israel is the only country in the world that still adheres to the tender years presumption, only country in the world where women are exempt from child support payments, only country in the world where women can make false police complaints and be immune from prosecution for false reports, only country in the world where a man can be thrown out of his house with underwear only, without trial and without evidence and indefinitely, and only country in the world where the child support rates are 3 times higher than the average of US, Western Europe and Australia. It is probably also the only country in the world that lawyers who work at a radical feminist clinic' such as Rackman Center, and who actively encourage women to fabricate false rape and pedophilia in their husbands, are promoted to judges, magistrates in collections and heads of the legal aid.

59. Therefore, Jewish fathers in Israel, following divorce, are unlawfully deprived of their fundamental rights, including the right to family life, as their financial devastation

after divorce effectively prevents them from having children within a second marriage. This results from the Radical Feminist ideology prevailing in the State of Israel - an ideology actively endorsed and perpetuated by the Defendants in the present case, under which the children of Jewish fathers from a subsequent marriage are foreseeably condemned to a state of poverty.

## **FIRST CAUSE OF ACTION (Anti-bribery)**

60. Plaintiff repeats and realleges all facts and circumstances described above.

61. The Rackman center has been bribing Judges and judicial candidates since Emmanuel Rackman built the center inside the Bar Ilan University, and masking it as an academic center. In fact, it is a political center that gets involved in drafting laws, in brainwashing members of the Knesset in antisemitic feminazi ideology, and in making all those wishing to get appointed to judgeship totally dependent on a recommendation from Rackman. This environment where everybody in Israel worships and obeys the Rackman feminazi ideology, and all are state employees, including the Defendants, depend on Rackman's approval for their jobs, is highly toxic and is the cause of the harm Plaintiff suffers. This includes, parental alienation, infliction of severe mental suffering, extortion, coercion, and other inhumane practices directed against the Jewish child's father.

62. The Defendants Shai, Plaut, Ben Eliezer, Ben Gal, Shevrin' Ben Gal and Geizler are fully liable for the intentional and malicious acts of parental alienation, which have unlawfully deprived the minor children of the care, companionship, and relationship of their loving biological father.

63. Defendants willfully and maliciously abused their powers for personal and institutional interests, employing them to promote prohibited ideologies of hatred and discrimination against Jewish fathers and men, which are funded by the Rackmans and AFBIU.

64. Note that in Israel, the prime minster is accused of bribery for receiving positive press coverage, champagnes and cigars, so the conduct of the Rackmans and AFBIIU in giving recommendation for judicial appointments and promotions, and positive press coverage paid by a network of reporters affiliated with Rackman is indeed bribery.

65. As a direct and foreseeable result of these acts, the Plaintiff has suffered not only profound psychological trauma, including post-traumatic stress disorder requiring medical treatment, but also grave and lasting consequences to his physical health.

66. The Defendants knew, or should have known, that applying discriminatory treatment and forced separation of a normative, caring, and loving father from his children causes irreversible harm to the psychological and physical well-being of both the father and the children. Furthermore, the Defendants knew or should have known that their conduct was in direct violation of Israeli domestic law, international law, United States law, peremptory norms of *jus cogens*, and other binding legal standards. The Plaintiff alleges that the Defendants' conduct falls within the legal definitions of Crimes Against Humanity, which are imprescriptible and not subject to any statute of limitations.

67. The imposition of exorbitant court fees constitutes a systematic method of depriving Jewish fathers in Family Court proceedings of meaningful access to appellate review. This discriminatory practice has been disproportionately applied to fathers and, in the present case, to the Plaintiff by the Defendant Carmit Ben Eliezer. Notwithstanding clear and documented evidence of the Plaintiff's severe financial hardship, the Defendant compels him to pay both a court fee and a deposit as a precondition to appeal. By doing so, the Defendant Ben Eliezer, acting in her capacity as an appellate judge, effectively denied the Plaintiff his fundamental right of access to justice, in violation of principles of due process and equality before the law.

68. This deliberate obstruction not only stripped the Plaintiff of the ability to challenge unlawful rulings of Defendant Shirley Shai but also perpetuated the ongoing parental alienation inflicted upon his minor children. The Defendant's actions therefore amount to a willful abuse of judicial authority, resulting in irreparable harm to the Plaintiff and his children. Therefore, Plaintiff is entitled to recover $2,000,000.

## SECOND CAUSE OF ACTION (Extortion and RICO)

69. Plaintiff repeats and realleges all facts and circumstances described above.

70. The scenario described above also constitutes organized crime, where all participants benefit from the confiscation and seizure of the Plaintiff's assets. To the end Defendants perpetrated acts of underlying crimes, such as solicitations of funds in the US

under false pretense, sending funds for a nefarious and political purposes to an overseas country (Israel), bribing and corrupting judges and magistrates, and brainwashing the entire society with ideology of hate and terror.

71.   Another component of the inhuman and degrading treatment directed against Jewish fathers in the State of Israel is the imposition of unaffordable and exorbitant child support obligations. The child support system in Israel functions as a means of relegating Jewish fathers to the lowest strata of the social hierarchy, making them into slaves, depriving them of the opportunity to lead a normal life and to serve as positive role models for their children.  Family Court judges, including Defendant Shai, with the support of Defendants Plaut and Ben Eliezer, in addition to systematically alienating Jewish fathers from their children, routinely impose child support obligations upon fathers in amounts that often exceed their total monthly income. At the same time, these judges deliberately destroy the fathers' employment and sources of livelihood. Subsequently, acting in concert with Magistrates of the Israel Enforcement and Collections Authority, including Defendants Gadot and Igra, they enforce these unpayable obligations through the imposition of draconian measures, such as the freezing of bank accounts, cancellation of credit cards, unlawful seizure of funds, forced bankruptcy, and consequent financial and personal devastation, based on false declaration, bogus receipts and "guidelines" that are outright robbery.

72. In the State of Israel, child support is imposed upon Jewish fathers irrespective of the mother's income or financial capacity. For example, the Plaintiff's ex-spouse, Defendant Yulia Shevrin, in addition to having a monthly income exceeding that of the Plaintiff, received a sum of 225,000 NIS pursuant to a court decision. Accordingly, she had, and continues to have, sufficient financial resources to support her children and was not in need of child support.

73. These practices are systematically implemented by Family Court judges with the full endorsement and affirmation of District Court and Supreme Court judges, who operate under the influence and direction of left-wing, pro-Palestinian, and communist-affiliated activists, political parties, NGOs, and associated entities. The purpose of this coordinated conduct to prevent the establishment of any legal precedent or judicial determination that could exempt a Jewish father from the obligation to pay child support.

74. Accordingly, as a direct consequence of the extortionate practices prevailing in the State of Israel, coupled with the unlawful actions of the Defendants Shai, Weizman, Gadot, Igra, Shevrin, Geizler and Ben Gal, the Plaintiff was compelled, under the guise of child support obligations, to pay the sum of 200,400 NIS ($60,083). In effect, the Defendants wrongfully imposed upon the Plaintiff the full financial burden of supporting the children, while at the same time unlawfully depriving him of his legal and natural right to maintain a relationship with them.

75. These unlawful practices are further designed to signal to women that divorce and the destruction of Jewish families in the State of Israel constitute a "win-win" outcome for them, thereby incentivizing and encouraging additional divorce proceedings in the Family Courts. In this context, the Defendants Shai, Weizman, Gadot, Igra, Shevrin, Ben Gal, Geizler and Kibenson have compelled the Plaintiff to pay child support for children who have been alienated and rebellious with whom he has lost contact as a direct result of the unlawful and criminal actions of Defendants. Note that Defendant Yulia Shevrin, enjoys a monthly income of 26,000 NIS ($7,212).

76. Since 2022, the Plaintiff has incurred legal expenses totaling NIS 299,687 ($90,104) in connection with court proceedings. This amount includes attorneys' fees, court costs, filing fees, as well as punitive costs arbitrarily imposed upon the Plaintiff by Defendant Shirley Shai in retaliation for his applications seeking to prevent his separation from his children and to oppose acts of Parental alienation.

77. Furthermore, in order to accommodate the wishes of the Plaintiff's ex-spouse, the Defendant Shevrin, the Defendants Nava Gadish, Shirley Shai and Lori Geizler unlawfully expelled the Plaintiff from his own residence, thereby forcing him to remain without permanent housing for a period of nearly three years. As a result, the Plaintiff, who was already financially impaired and suffering from severe emotional distress, was subjected to further unnecessary expenses and was deprived of the ability to maintain even a minimally adequate standard of living.

78. Thus, the deliberate and unlawful actions of Defendants Shai, Gadish, Weizman, Gadot, Igra, Shevrin, Ben-Gal, and Geizler have resulted in the Plaintiff being left without means of subsistence or rehabilitation following the severe emotional distress

inflicted upon him by the Defendants, and burdened with overwhelming debts that make it impossible for him to rebuild his life, form a new family, or have additional children.

79. WHEREFORE, Plaintiff requests judgment in his favor and against Defendants in the amount of $2,000,000.

## THIRD CAUSE OF ACTION (Parental Alienation)

80. Plaintiff repeats and realleges all facts and circumstances described above as if fully set forth herein.

81. As previously stated, Parental alienation in Israel constitutes both a deliberate mechanism for inflicting severe mental suffering and an instrument for extortion, coercion, and other inhumane practices directed against the child's father. The Defendants Shay, Plaut, Ben Eliezer, Ben Gal, Yulia Shevrin and Geizler are fully liable for the intentional and malicious acts of parental alienation, which have unlawfully deprived the minor children of the care, companionship, and relationship of their loving biological father. Whereas the Defendants, Shay, Plaut, and Ben Eliezer, possess all requisite legal and institutional authority to administer justice and to safeguard the fundamental, essential, and derivative rights of citizens, parents, and children; moreover, it is their direct and official duty to exercise such authority for those lawful purposes.

82. Pursuant to Israeli domestic law, International law, United States law, and peremptory norms of *jus cogens*, the Defendants are legally bound to ensure the protection of these rights and the proper administration of justice. Instead, the Defendants have willfully and maliciously abused their powers for personal and institutional interests, employing them to promote prohibited ideologies of hatred and discrimination against Jewish fathers and men.

83. Such conduct has resulted in the forcible deprivation of contact between fathers and their children, acts of extortion, enslavement, unlawful imprisonment, deprivation of liberty, the commission of crimes amounting to apartheid, and other inhumane acts of similar character - intentionally inflicting great suffering and causing severe physical and psychological harm to Jewish fathers and men within the State of Israel.

84. The acts committed by Defendants Shirley Shay, Varda Plaut, Carmit Ben Eliezer, Yulia Shevrin, Lori Geizler and Galit Ben Gal have intentionally deprived the Plaintiff's minor children of their fundamental right to grow up in a family environment and to maintain meaningful contact with their extended family on the Plaintiff's side. The Defendants' conduct has further deprived the children of the right to be raised in an atmosphere of happiness, love, and understanding, thereby inflicting severe psychological harm and causing long-term and irreparable damage to their emotional well-being, including foreseeable adverse effects persisting into adulthood.

85. The Defendants, Shay, Plaut, and Ben Eliezer, acting in their capacity as public authorities and officials of the State of Israel, have, both actively and by omission, compelled children within the Jewish sector in Israel including the plaintiff's children to grow up in an atmosphere of hatred and hostility toward their biological fathers. Such conduct constitutes a grave abuse of authority, causing foreseeable and substantial harm to the children's future prospects for social integration and resulting in irreversible damage to their physical and psychological health.

86. Professionals in the State of Israel who work with children, including, *inter alia*, school teachers, kindergarten teachers, medical doctors, psychologists, Social Welfare officials, GALs, lawyers including the Defendants Geizler and Ben Gal, are, *de jure*, obligated to identify, report and prevent instances of parental alienation and the dehumanization of fathers. *De facto*, however, many such professionals acquiesce in or permit these acts to persist, motivated by fear of losing their professional licenses or employment. By failing to act, they enable the continuation of this dangerous phenomenon, which constitutes a grave form of psychological abuse against children and their fathers.

87. The Plaintiff asserts that the Defendants acted willfully, deliberately, and with malicious intent against him, as against other Jewish fathers in the State of Israel, by exploiting his children and employing Parental alienation as an instrument to inflict severe mental suffering upon him and to extort and blackmail him. As a direct and foreseeable result of these acts, the Plaintiff has suffered not only profound psychological trauma, including post-traumatic stress disorder requiring medical treatment, but also grave and lasting consequences to his physical health.

88. The Defendants knew, or should have known, that the forced separation of a normative, caring, and loving father from his children causes irreversible harm to the psychological and physical well-being of both the father and the children. Furthermore, the Defendants knew or should have known that their conduct was in direct violation of Israeli domestic law, international law, United States law, peremptory norms of *jus cogens*, and other binding legal standards. The Plaintiff alleges that the Defendants' conduct falls within the legal definitions of Crimes Against Humanity, which are imprescriptible and not subject to any statute of limitations.

89. In an effort to safeguard his own rights and those of his children, and to prevent further Parental alienation, the Plaintiff submitted dozens of formal complaints to the Israeli judicial authorities, the Israel Police, the Office of the State Attorney, the Ombudsman of the Israeli Judiciary, and even to government ministers. The ongoing failure of state authorities to safeguard fundamental human rights, including those of the Plaintiff, constitutes clear evidence of the absence of adequate and effective legal remedies within the State of Israel.

90. WHEREFORE, the Plaintiff respectfully requests that judgment be entered in the amount of $2,000,000, and that the Court issue an order enjoining the Defendants from intentionally creating or perpetuating parental alienation and from using the Plaintiff's children as a means to extort or subject the Plaintiff to psychological harm.

## FOURTH CAUSE OF ACTION

(Common law torts, Unlawful Confinement of the Plaintiff and Violation of His Human Dignity, Freedom, and Liberty)

91. Plaintiff repeats and realleges all facts and circumstances described above.

92. As a result of Defendants actions, Plaintiff suffered unlawful deprivation and violation of the Plaintiff's inviolable right to private property and to reside in his own apartment. As part of the acts directed against Jewish men and fathers, the authorities employ unlawful confinement (throwing a man out of his house without trial or evidence and issuance of a no exit order), impose restrictions on their human dignity, freedom, and liberty within the State of Israel, and subject him to repeated arrests on bogus complaints.

93. Accordingly, Defendants Gadish, Shai, Geizler, and Shevrin bear responsibility for the unlawful deprivation of the Plaintiff's access to his apartment, which, pursuant to a agreement, belonged to the Plaintiff. By doing so, the Defendants Gadish, Shai, Geizler, and Shevrin compelled the Plaintiff, already deprived of his basic and essential rights, to remain without a permanent residence and to wander for nearly three years. As previously set forth in this lawsuit, Defendant Gadish, acting without legal basis and in the absence of any supporting evidence, issued a restraining order against the Plaintiff which, at the request of Defendants Geizler and Shevrin, unlawfully deprived the Plaintiff of his right to reside in his own apartment.

94. Defendant Gadish, acting without evidentiary basis or due process and at the request of Defendants Geizler and Shevrin, issued a restraining order against the Plaintiff for a period of 60 days. Defendant Gadish knew, or in the very least ought to have known, that the eviction of the Plaintiff from his home constituted an unlawful and arbitrary act, and that the issuance of a restraining order against the Plaintiff amounted to an abuse of Judicial authority and an official misconduct, thereby violating the Plaintiff's fundamental right to housing as well as his right to private property.

95. Defendants Geizler and Shevrin knew, or should have known, that filing a petition to deprive the Plaintiff of his housing was unlawful, and that the request for a restraining order against the Plaintiff constituted an illegitimate and unlawful act in direct violation of his fundamental right to housing and his constitutionally protected right to private property. Defendant Geizler further knew that such a request could only be endorsed by the Defendants as part of an ideologically driven campaign of animus and discrimination directed against Jewish men and fathers - conduct wholly incompatible with the principles of justice, equality, and the rule of law in any democratic state.

96. Defendants Shai, Shevrin, and Geizler, as the principal actors responsible for the parental alienation of the Plaintiff's children from their biological father [the Plaintiff] and for exploiting the children as instruments of psychological coercion and financial extortion, together with Defendant Gadish, bear direct responsibility for the unlawful deprivation of the Plaintiff's right to reside in his apartment and for the violation of his constitutionally protected right to private property.

97. Following the expiration of the sixty-day restraining order issued by Defendant Gadish, Defendant Shai, acting in favor of Defendants Geizler and Shevrin, unlawfully continued for nearly three years to deprive the Plaintiff of his right to reside in his apartment, thereby further violating his right to private property.

98. Defendants Geizler and Shevrin repeatedly asserted in court, before Defendant Shai, that they had, without notifying the Plaintiff, influenced the Plaintiff's legal representatives to abandon their client's interests and instead adopt the position of the opposing side, namely Defendants Geizler and Shevrin, against the Plaintiff.

99. Defendant Shai knew or should have known, that by adopting and endorsing the position advanced by Defendants Geizler and Shevrin, she was unlawfully and arbitrarily infringing upon the Plaintiff's fundamental right to private property, thereby willfully and deliberately inflicting material, physical, and moral harm upon the Plaintiff.

100.     Another inhumane, illegal under Israeli domestic law, under International law and a Law of United States, and degrading practice against Jewish fathers in the State of Israel is the imposition of a No Exit order. The "No Exit Order" imposed on the father is issued *ex parte*, automatically, at the request of the mother, for the sole purpose of preventing him from escaping persecution, inhuman acts, and other forms of degrading treatment and punishment. This mechanism, used systematically in Israel for many years, serves as a tool to subject Jewish fathers to oppression, humiliation, impoverishment, debt slavery, and other inhuman and degrading practices, while at the same time depriving them of the ability to exercise their parental rights over their children.

101.     Courts in Israel often issue No Exit orders against men and fathers automatically and unilaterally, even before divorce proceedings begin, and frequently apply this sanction to non-Israeli fathers as well.

102.     Defendants Gadot, Igra, Geizler, Ben-Gal, and Yulia Shevrin are directly responsible for unlawfully restricting the Plaintiff's freedom of movement through the issuance of a No Exit Order, thereby prohibiting him from traveling abroad. Defendants Gila Gadot and Aviad Igra bear responsibility as judges who abused their judicial authority, while Defendants Lori Geizler, Galit Ben-Gal, and Yulia Shevrin bear responsibility for abuse of legal process.

24

103.     Plaintiff was also subjected to malicious prosecution; a barrage of complaints and motion nonstop designed to torment and weaken the Plaitiff's ability to resist. Since 2022 Plaintiff has filed over 100 well-founded complaints with the Police for non-compliance with the Court decisions by his ex-spouse and violence, but these cases were closed on the same day without any action or sanctions.

104.     On the other hand, Defendant Shevrin, acting upon the recommendation of Defendant Ben Gal, filed false and malicious complaints with the Israel Police against the Plaintiff, entirely unsupported by evidence. These fabricated allegations resulted in the Plaintiff's wrongful arrest on suspicion of violence against his ex-spouse and subjected him to prolonged and unjustified interrogation. Despite the Plaintiff having provided the police with clear evidence of his innocence, the Israel Police and the Office of the State Attorney nevertheless intend to pursue an indictment against him, in blatant disregard of the facts and due process of law.

105.     WHEREFORE, Plaintiff requests judgment in his favor and against Defendants in the amount of $2,000,000.

## FIFTH CAUSE OF ACTION (infliction of emotional distress)

106.     Plaintiff repeats and realleges all facts and circumstances described above.

107.     Plaintiff suffered emotional distress by the Defendants. The Plaintiff's deprivation of housing, separation from his children, impoverishment, humiliation, malicious prosecution, denial of a fair trial, abuse of legal process, and other inhumane and degrading acts described in this Statement of Claim, perpetrated by the Defendants against the Plaintiff, have caused him severe mental suffering and a deterioration of his health.

108.     Since the commencement of the legal proceedings in 2022, and as a direct result of the Defendants' actions, the Plaintiff's mental and physical condition has deteriorated to a pathological state within a short period of time. The Plaintiff was compelled to increase the dosage of Cipralex due to severe anxiety and stress, and is currently required to take three medications for hypertension and tachycardia, as well as preventive blood-thinning medications. The Plaintiff's overall health condition has worsened, including deterioration of the endocrine system.

109.     The Plaintiff is further compelled to take the following medications: Valsartan, Lercanidipine, Bisoprolol, Fucidin, Diazepam, Lansoprazole, Escitalopram, Aspirin, Bondormin, and Vitamin D.

110.     The Defendants knowingly and purposefully, both directly and indirectly, intentionally facilitated and disregarded the commission of acts designed to violate the Plaintiff's rights, impoverish him, undermine his self-esteem, and disengage the Plaintiff from his children and his property. As a direct result of the Defendants' intentional misconduct and their disregard for the Plaintiff's fundamental rights, life, and well-being, the Plaintiff has suffered, and will continue to suffer, severe and permanent emotional and physical disorders, including emotional distress, anxiety, and both physical and mental suffering. The Plaintiff has sustained significant psychological injury and impairment, resulting in ongoing and long-term expenses for medical treatment, therapeutic services, and continuing care.

111.     The Plaintiff has been severely harmed by the deliberate and discriminatory antisemitic actions of the Defendants, including false arrests, arbitrary detentions, and other unlawful restrictions on his liberty, systematic dehumanization, violations of his inherent human dignity and freedom, and the dissemination of massive defamatory statements directed against him. The Defendants further subjected the Plaintiff to prolonged and deliberate disengagement from his children, Parental alienation, and the weaponization of the plaintiff's children as tools of punishment against him.

112.     These actions were neither isolated nor accidental, but a part of a deliberate and orchestrated campaign of persecution, driven by gender-based bias and antisemitic animus within the State of Israel. The Defendants, together with other public officials and state authorities, specifically targeted the Plaintiff because he is both a man and a Jew, thereby engaging in unlawful discrimination in direct violation of fundamental human rights and protections guaranteed under Israeli Domestic law, international law and United States law.

113.     Plaintiff has suffered severe and irreparable injury as a direct result of the Defendants' unlawful actions, including but not limited to false arrests, arbitrary detentions, and other unlawful restrictions on his liberty. The Defendants' conduct caused Plaintiff to develop Post-Traumatic Stress Disorder, endure sleep deprivation, heightened

emotional distress, dependency on medication, and substantial loss of wages and earning capacity, culminating in the loss of employment and irreparable damage to his professional reputation. The Defendants further engaged in financial persecution through the unlawful freezing of bank accounts, cancellation of credit cards, illegal seizure of funds, and forced bankruptcy, thereby driving the Plaintiff into actual impoverishment and financial ruin.

114.     WHEREFORE, the Plaintiff respectfully requests that judgment in the amount of $2,000,000, and order enjoining the Defendants from any future violations of his rights and subjecting him to discrimination, gender apartheid and feministic terror.

## SIXTH CAUSE OF ACTION

115.     (Bennet M. Rackman and Sophia Hershman Rackman, Rackman center and Propaganda of hatred against Jewish men and fathers)

Plaintiff repeats and realleges all facts and circumstances described above as if fully set forth herein.

116.     WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants in the amount exceeding $2,000,000, and injunction against funding the Rackman Center via the AFBIU, together with such other and further relief as the Court may deem just and proper, and costs and disbursements

Dated:   Fort Lauderdale, FL
         November 29, 2025

_Vladimir Shevrin_

**Vladimir Zeev Shevrin**

1302 E Las Olas Boulevard,

Fort Lauderdale, FL, 33301 USA

Tel. 954-780-6770

## Address List

Plaintiff

**Vladimir Zeev Shevrin**

1302 E Las Olas Boulevard,

Fort Lauderdale, FL, 33301 USA

Tel. 954-780-6770

Defendants

**1.  Bennet M. Rackman**

1011 Upminster J, Deerfield Bch, FL 33442  (718) 634-3872

**2.   Sophia Hershman Rackman**

7076 Mandarin Dr, Boca Raton, FL 33433

Tel. 917-701-7709

**3.  American Friends of Bar Ilan AFBIU**

c/o Jessica Levy Rozental Ben Nun

Director of Development Southern Regional

3330 NE 190th St, Unit 919, Aventura FL 33180

Tel. 305-335-3998, email: jessica@shebamed.org

**4. Shirley Shai**

53 Gissin Street 53, Bldg. D, Petah Tikva, Israel

Tel. +972-77-2703333

**5. Carmit Ben Eliezer**

Sderot Hatsiyonut 3, Lod, Israel

Tel. +972-77-2703333

**6. Varda Plaut**

14 Nir Street, Petah Tikva, Israel

Tel. +972-3-924-7031

**7. Nava Gadish**

10 Hatanaa Street, Zihron Yakov, Israel

Tel. +972-4-629-0077

**8. Zvi Weizman**

9 Haziyonut, Givat Shmuel, Israel

Tel. +972-50-625-5565

**9. Gila Gadot**

18 Shderot Ben Zvi Avenue, Hotzlap Bldng., Netania, Israel

Tel. +972-73-205-5000

**10. Aviad Igra**

18 Shderot Ben Zvi Avenye, Hotzlap Bldng, Netania

Tel. +972-73-205-5000

**11. Lori Geizler**

5 Hayarkon Street, Building B, Floor 12, Bnei Brak, Israel

Tel. +972-73-705-1480

**12. Galit Ben Gal**

8 Hashekmim Street, Ramat Ishay, Israel,

Tel. +972-4-900-1022

**13. Yulia Shevrin**

95/14 Ben Zvi Street, Netania, Israel

Tel. +972-52-986-040

**14. Inbal Kibenson**

10 Hacarmel Street, Tivon, Israel

Tel. +972-54-246-7746



UNITED STATES ps

Address Co

Original Address:
Filing Clerk Florida Sout District
299 E BROWARD BLVD
FORT LAUDERDALE, FL 33301
9547695400

Corrected Address:
FILING CLERK FLORIDA
299 E BROWARD BLVD
STE 108
FORT LAUDERDALE, FL 3
9547695400

FedEx

TRK#   8872 6601 6344

4Z FTLAG

299 E BROWARD BLVD
STE 108
FORT LAUDERDALE FL   33301-1922-33

416-3024 - AC

ETP: 2
SP:AC:100:Y
1196269232890000333010088726601634 4

Recycle me

416-1557

ETR-2   0511417000000061801102
SHPD100GY
0333   TUE 12/23 06:12
PBLC WRKS ADM ENGRG PUBLIC
100 N ANDREWS AVE
FORT LAUDERDALE FL
3301-107   2244109   G

# FedEx ®

**This envelope is only for FedEx Express® sh**

You can help us get your package safely to its
items securely. Need help? Go to **fedex.com/p**

Check your FedEx shipping document, the cur
or the conditions of carriage for complete ter
of liability.

© 2025 FedEx 155475/155476 REV 2/25



PAP 21

Please recycle. See how we are connecting th
and resourceful ways at **fedex.com/sustaina**
may vary by location.



**Scan to learn how we
can help make Earth
a priority together.**